UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
------------------------------------------------------------X  
In re  

MARACAS CLUB AND RESTAURANT LLC,  

        Debtor.  
------------------------------------------------------------X  

**Hearing Date: October 20, 2015**  
**Hearing Time: 10:30 a.m.**  

Case No. 14-44489 (ESS)  

Chapter 11  

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE UNITED STATES TRUSTEE TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 OR, IN THE ALTERNATIVE, DISMISS CASE

**WILLIAM K. HARRINGTON**  
**UNITED STATES TRUSTEE, REGION 2**  
201 Varick Street, Suite 1006  
New York, New York 10014  
Tel. No. (212) 510-0500  
Fax No. (212) 668-2255  

William E. Curtin, Esq.  
Of Counsel

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this memorandum in support of his motion for an order, pursuant to 11 U.S.C. § 1112(b), converting the chapter 11 case of Maracas Club and Restaurant LLC (the "Debtor") to a case under chapter 7 or, in the alternative, dismissing the chapter 11 case (the "Motion").  In support of the Motion, the United States Trustee respectfully represents and alleges as follows:

## I. INTRODUCTION

The Court should convert the Debtor's chapter 11 case to chapter 7, or dismiss the case, because the Debtor has proven that it is unable or unwilling to properly conduct itself as a debtor-in-possession.  The Debtor has failed to pay over $37,000.00 in post-petition taxes, paid employees (possibly including shareholders) directly without withholding payroll taxes and made over $19,000.00 in cash disbursements to unknown parties. Also, there are continuing losses to the estate in this case and, as the Debtor does not appear to be able to propose a confirmable plan, there is no likelihood of rehabilitation.  Finally, the Debtor has failed to timely file monthly operating reports and pay quarterly fees to the United States Trustee.  Cause, therefore, exists to convert this case to chapter 7 or dismiss this case under sections 1112(b)(4)(A), (B), (F), (I) and (K).

The Court should convert the Debtor's case to chapter 7 because conversion is in the best interest of creditors and the estate.  This Debtor may have assets, and the Debtor's conduct during its case suggests that the Debtor's current management has not complied with proper procedure as a debtor-in-possession and calls into question all of the financial disclosures made by the Debtor to date.  Conversion provides an avenue for an independent trustee to examine the

Debtor's books and records, recover transfers, commence litigation and liquidate assets for the benefit of creditors.

## II. STATEMENT OF FACTS

1. On September 2, 2014 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition (the "Petition") seeking relief under chapter 11 of the Bankruptcy Code. ECF No. 1. The Petition was signed by Babita Raquel Shivdat ("Shivdat"), as President of the Debtor. Id. The Debtor filed schedules on September 26, 2014. ECF Doc. No. 12.

2. No Trustee or Examiner has been appointed in this case, and the Debtor remains in control and possession of its assets as a debtor-in-possession. See Declaration of William E. Curtin in Support of the United States Trustee's Motion, dated September 22, 2015 (the "Curtin Decl."), ¶3.

3. The United States Trustee was unable to appoint an official committee of unsecured creditors. See Curtin Decl., ¶ 4.

**Assets and Liabilities**

4. The Debtor scheduled no real property and personal property, consisting mostly of equipment and inventory, with an aggregate value of $12,300.00. ECF Doc. No. 12, Schedules A and B.

5. The Debtor scheduled a secured tax claim in the amount of $91,057.01, $60,117.86 in priority claims and $119,529.72 in general unsecured claims. ECF Doc. No. 12, Schedules D, E and F.

6. By Order dated December 11, 2014, the Court established January 19, 2015 as the last day for creditors to file claims against the Debtor. ECF Doc. No. 25.

7. To date, the Claims Register contains fourteen claims filed against the Debtor totaling $10,348,084.2. See Claims Register, Claim Nos. 1-14.

**Failure to Pay Post-Petition Federal Withholding Taxes**

8. According to the most recently filed claim of the Department of Treasury/Internal Revenue Service ("IRS"), as of September 3, 2015 the Debtor has failed to pay post-petition withholding and corporation tax in the aggregate amount of $20,598.10. See Claims Register, Claim No. 14.

**Failure to Pay Post-Petition New York State Withholding and Sales Tax**

9. According to the most recently filed claim of the New York State Department of Taxation and Finance ("NYS"), as of July 16, 2015 the Debtor has failed to pay post-petition withholding and sales tax in the aggregate amount of $16,839.39. See Claims Register, Claim No. 12.

**Failure to Pay Post-Petition Unemployment Insurance Contributions**

10. According to the most recently filed claim of the New York State Department of Labor ("NYSDOL"), as of August 21, 2015 the Debtor has failed to pay post-petition unemployment insurance contributions in the aggregate amount of $699.72. See Claims Register, Claim No. 11.

**Monthly Operating Reports**

11. The Debtor has filed eleven operating reports with the Court since the Petition Date. ECF Doc. Nos. 27, 32, 33, 34, 36, 37, 42, 43, 45, 46 and 53. Each operating report was signed by Shivdat with the following declaration:

> In accordance with Title 28, Section 1746 of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating

report and the accompanying attachments and, to the best of my knowledge, these documents are true correct and complete.

Id.

12.    The three most recent three monthly operating reports filed with the Court for May 2015, June 2015 and July 2015 contained the following statement from the Debtor's accountant:

There have been a number of checks cut directly to employees and not processed using a payroll service [and] the corresponding payroll taxes haven't been collected or paid to the tax[ing] authorities. We have advised the taxpayer [that] they need to put all employees[,] including the shareholder[,] on the payroll.

ECF Doc Nos. 45, 46 and 53.

13.    The July 2015 monthly operating report revealed numerous checks made payable to cash in the aggregate amount of $19,088.00. ECF Doc. No. 53. The cash disbursements are summarized in the chart below:

| Date | Amount |
|---|---|
| July 10, 2015 | $14,280.00 |
| July 10, 2015 | $8.00 |
| July 14, 2015 | $1,500.00 |
| July 14, 2015 | $1,400.00 |
| July 20, 2015 | $1,500.00 |
| July 20, 2015 | $400.00 |
| **TOTAL** | **$19,088.00** |

Id.

14.    Each monthly operating report filed with the Court also contained a "Debtor Questionnaire." See, e.g ECF Doc. No. 53. The Debtor Questionnaire asks a series of plain-language questions regarding the most critical aspects of debtor-in-possession operations. Id. The Debtor questionnaire for July 2015 contained the following questions:

a)    Have you paid your bills on time this month?

   b)  Have you deposited all the receipts for your business into the DIP account the month?
   c)  Have you filed all of your tax returns and paid all of your taxes this month?
   d)  Have you timely filed all other required government filings?

Id., Debtor Questionnaires, Lines 2, 4, 5 and 6. The Debtor answered "no" to these four questions. Id.

  15.  The Debtor has reported losses in each of the last four months for which it has filed monthly operating reports. ECF Doc Nos. 43, 45, 46 and 53. These losses are summarized in the chart below:

| Month | Loss |
| --- | --- |
| April 2015 | -$12,231.60 |
| May 2015 | -$7,840.95 |
| June 2015 | -$7,810.24 |
| July 2015 | -$14,694.08 |

Id.

**Failure to Pay Quarterly Fees and Timely File Monthly Operating Reports**

  16.  On September 5, 2014, the United States Trustee sent the Debtor a letter (the "January 19th Letter") enclosing a copy of the United States Trustee Operating Guidelines (the "Guidelines"). See Curtin Decl., ¶17. The Guidelines outline the requirements for debtors-in-possession, including the obligation to pay quarterly fees to the United States Trustee. Id.

  17.  On September 29, 2014, the United States Trustee held an Initial Debtor Interview (the "Initial Debtor Interview"), and on October 6, 2014, the United States Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Meeting of Creditors"). The principal of the Debtor attended the Initial Debtor Interview and the Meeting of Creditors and was advised of the United States Trustee's Operating Guidelines for debtors-in-

possession, including the obligation to pay quarterly fees to the United States Trustee and timely file monthly operating reports. See Curtin Decl., ¶ 18.

18. The Debtor is currently delinquent on the payment of quarterly fees to the Office of the United States Trustee in the amount of $650.00. See 11 U.S.C. § 1930; Curtin Decl., ¶ 19.

19. All eleven operating reports filed by the Debtor were filed late, often by several months, and the August 2015 monthly operating report is currently past due. ECF Doc. Nos. 27, 32, 33, 34, 36, 37, 42, 43, 45, 46 and 53; Curtin Decl., ¶ 20.

## III. ARGUMENT

### A. There is Cause to Convert or Dismiss this Case under 11 U.S.C. § 1112(b) Due to the Debtor's Failure to Pay Quarterly Fees.

Section 1112(b) provides, in part, that:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (2010).

Section 1112(b)(4) lists provides fifteen examples of cause, including

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
> \*\*\*
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; [and]
> \*\*\*
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; and

\*\*\*

  (K) failure to pay any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(4).

The list of factors is non exclusive. In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). See also In re State Street Assoc., L.P., 348 B.R. 627, 639 (Bankr. N.D.N.Y. 2006) (noting in pre-BAPCPA case that amended 1112(b) contains non-exclusive factors to be considered in determining whether cause exists to convert or dismiss a case). A party need not demonstrate that all the elements of "cause" can be met. See In re TCR of Denver, LLC, 338 B.R. 494, 500 (Bankr. D. Colo. 2006). The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. 1031 Tax Group, 374 B.R. at 93; cf. In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997) (bankruptcy Court may dismiss Chapter 11 filing on motion or sua sponte upon a finding that the filing was in "bad faith" even without consideration of factors set out in section 1112(b).

  **1.** **The Debtor Has Failed to Remain Current on its Post-Petition Tax Obligations.**

The Debtor's failure to remain current on its post-petition tax obligations constitutes cause to dismiss or convert this case. 11 U.S.C. § 1112(b)(4)(I); see also In re Pittsfield Weaving Co., 393 B.R. 271, 273 (Bankr.D. N.H. 2008) (finding cause to convert or dismiss case based upon, inter alia, the debtor's failure to remain current on post-petition tax obligations); Emergystat of Sulligent, 2008 WL 597613, at \*9 (finding cause to convert or dismiss case on numerous grounds including, inter alia, the debtor's failure to remain current on post-petition tax obligations and debtor's failure to timely file tax returns); In re Berryhill, 189 B.R. 463, 466-467

(N.D.Ind. 1995) (failure to pay post-petition taxes constitutes cause for conversion or dismissal of case).

According to the most recently filed claim of the IRS, as of September 3, 2015 the Debtor has failed to pay post-petition withholding and corporation tax in the aggregate amount of $20,598.10. See Claims Register, Claim No. 14. In addition, according to the most recently filed claim of NYS, as of July 16, 2015 the Debtor has failed to pay post-petition withholding and sales tax in the aggregate amount of $16,839.39. See Claims Register, Claim No. 12. Cause, therefore, exists to convert this case under Section 1112(b)(4)(I).

### 2. The Debtor Has Grossly Mismanaged its Estate.

The Debtor's gross mismanagement of its estate constitutes grounds for conversion of its case to chapter 7. 11 U.S.C. § 1112(b)(4)(B); see In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr. M. D. Pa. 2007) (failure to maintain effective corporate management team constituted gross mismanagement and is cause to dismiss chapter 11 case); In re Products International Company, 395 B.R. 101, 111 (Bankr. D. Arizona 2008) (gross mismanagement is cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)); In re Tucker, 411 B.R. 530, 533 (Bankr. S.D. Georgia 2009) (standing alone, gross mismanagement is sufficient cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)). As a debtor-in-possession of its estate, the Debtor owes a fiduciary duty to its creditors and is obligated to follow the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. In re Wallace, 2010 WL 378351 at *4 (Bankr. D. Idaho, January 26, 2010); see e.g. 11 U.S.C. §§1106 and 1107 and Fed R. Bankr. P. 2015 (delineating the duties of chapter 11 debtors in possession).[1]

---

[1] The United States Trustee provides debtors in possession with the Guidelines to help them navigate chapter 11 by clarifying their financial reporting requirements and addressing other requirements and limitations on their post-petition actions. See In re Wallace, 2010 WL 378351 at *4.

The Debtor has grossly mismanaged its estate in several ways:

1) The Debtor questionnaire for July 2015 contained the following questions:

   a) Have you paid your bills on time this month?
   b) Have you deposited all the receipts for your business into the DIP account the month?
   c) Have you filed all of your tax returns and paid all of your taxes this month?
   d) Have you timely filed all other required government filings?

Id., Debtor Questionnaires, Lines 2, 4, 5 and 6. The Debtor answered "no" to these four questions. Id.

2) The three most recent three monthly operating reports filed with the Court for May 2015, June 2015 and July 2105 contained the following statement from the Debtor's accountant:

> There have been a number of checks cut directly to employees and not processed using a payroll service [and] the corresponding payroll taxes haven't been collected or paid to the tax[ing] authorities. We have advised the taxpayer [that] they need to put all employees[,] including the shareholder[,] on the payroll.

ECF Doc Nos. 45, 46 and 53.

3) According to the most recently filed claim of the NYSDOL, as of August 21, 2015 the Debtor has failed to pay post-petition unemployment insurance contributions in the aggregate amount of $699.72. See Claims Register, Claim No. 11.

4) The July 2015 monthly operating report revealed numerous checks made payable to cash in the aggregate amount of $19,088.00. ECF Doc. No. 53.

Failure to pay post-petition taxes and other bills, failure to deposit Debtor funds into the DIP account, failure to withhold and submit payroll taxes to taxing authorities, failure to make required insurance contributions and making cash disbursements all constitute gross

mismanagement. See In re Gateway Access Solutions, Inc., 374 B.R. 556, 564. Cause, therefore, exists to convert this case under Section 1112(b)(4)(B).

### 3. There are Continuing Losses to the Estate and No Likelihood of Rehabilitation.

#### a. Continuing Losses to the Estate.

"To determine whether there is a continuing loss or a diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements." In re AdBrite Corp., 290 B.R. 209, 215 (Bankr.S.D.N.Y. 2003). There need not be significant diminution to satisfy the first prong of section 1112(b)(4)(A). See In re East Coast Airways, Ltd., 146 B.R. 325, 336 (Bankr.E.D.N.Y. 1992); In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988). An estate's liability for administrative expenses constitutes a diminution in assets. In re Lyons Transportation Lines, Inc., 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991). Further, a debtor's negative post-petition cash flow and inability to pay current expenses establishes that a debtor has continuing losses. AdBrite, 290 B.R. at 215. [R]ehabilitation means to put back in good condition and reestablish on a sound basis." AdBrite, 290 B.R. at 216, see also In re Rundlett, 136 B.R. 376, 380 (Bankr.S.D.N.Y. 1992) ("[r]ehabilitation signifies that the debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can be met").

There are continuing losses to the estate in this case. The Debtor has reported losses in each of the last four months for which it has filed monthly operating reports. ECF Doc Nos. 43, 45, 46 and 53; In re Loop Corp., 379 F.3d 511, 515-16 (8th Cir. 2004) ("negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate'" under 11 U.S.C. §1112(b)). Moreover, as this case remains in Chapter 11, administrative costs continue to

accrue, with little or no potential benefit to creditors, which contributes to the continuing losses to the estate to the detriment of creditors. See In re Lyons Transportation Lines, Inc., 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991) (an estate's liability for administrative expenses constitutes a diminution in assets).

### b.    No Likelihood of Rehabilitation.

As a threshold matter, any plan of reorganization must be feasible. 11 U.S.C. § 1129(a)(11). The feasability requirements of Section 1129(a)(11) ensure that confirmation proceeds only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." Id. In the Second Circuit, the standard for feasibility is "whether the plan offers a reasonable assurance of success. Success need not be guaranteed." Kane v. Johns-Manville (In re Johns-Manville Corporation), 843 F.2d 636, 649 (2d Cir. 1988). Bankruptcy courts consider factors including "the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation" when assessing whether a plan is feasible. In re D&G Invs. of West Fla., Inc., 342 B.R. 882, 886 (Bankr. M.D. Fla. 2006). In determining if a plan is feasible, the "inquiry is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute." In re Eddington Thread Mfg. Co., 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995). "In most situations, the time immediately following bankruptcy will call for fairly specific proof of the company's ability to meet its obligations . . .". Dish Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am. Inc.), 634 F.3d 79, 107 (2d Cir. 2011).

Here, the Debtor presently has no funds available to fund a plan of reorganization. ECF Doc Nos. 43, 45, 46 and 53. Because the Debtor does not appear to be able to propose a feasible plan, there is no likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

### 4. The Debtor Has Failed to File Monthly Operating Reports.

All eleven operating reports filed by the Debtor were filed late, often by several months, and the August 2015 monthly operating report is currently past due. ECF Doc. Nos. 27, 32, 33, 34, 36, 37, 42, 43, 45, 46 and 53; Curtin Decl., ¶ 20. Pursuant to E.D.N.Y. LBR 2015-1, the Debtor is required to file monthly operating reports for each and every month that the Debtor is in chapter 11. See E.D.N.Y. LBR 2015-1. The reports must be filed no later than the twentieth day of the following month. Id.

The Debtor's failure to timely file monthly operating reports demonstrates a disregard for its responsibilities as a debtor-in-possession. See In re Marvel Entertainment, Inc., 140 F.3d 463, 474 (3d Cir. 1998) (debtors have a fiduciary duty of open, honest and straightforward disclosure to the Court and creditors). The Debtor's failure to fulfill its fiduciary obligations denies creditors access to important financial information regarding the Debtor's financial affairs. "Timely and accurate financial disclosure is the lifeblood of the Chapter 11 process." In re Berryhill, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991) (failure to file operating reports constitutes cause for dismissal or conversion of chapter 11 proceeding); see also In re Roma Group, Inc., 165 B.R. 779, 780 (S.D.N.Y. 1994) (citing In re Berryhill); In re Tornheim, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (debtors' failure to file reports for ten months warranted conversion or dismissal).

In this case, the Debtor's failure to timely file monthly operating reports has deprived the Court, the United States Trustee and creditors of the ability to adequately monitor this case. The Debtor's unexcused failure to timely file these operating reports constitutes cause for the dismissal or conversion of the Debtor's case. See 11 U.S.C. § 1112(b)(4)(F).

### 5. The Debtor has Failed to Pay Quarterly Fees to the United States Trustee

By statute, the Debtor is required to pay a quarterly fee to the United States Trustee for each quarter until entry of a final decree, conversion or dismissal. 28 U.S.C. § 1930(a)(6). United States Trustee quarterly fees must be paid when due. Id. The Debtor is currently delinquent on the payment of quarterly fees to the Office of the United States Trustee in the amount of $650.00. See 11 U.S.C. § 1930; Curtin Decl., ¶ 19. Section 1112(b)(4)(K) provides that nonpayment of any fees charged under chapter 123 of title 28 is cause to convert or dismiss a chapter 11 case. The fees assessed pursuant to 28 U.S.C. § 1930(a)(6) fall within the category of fees levied under chapter 123 of title 28. In re Tornheim, 181 B.R. 161 (Bankr. S.D.N.Y. 1995). The Debtor's failure to meet its financial obligations by the payment of quarterly fees is a basis for the dismissal of this case, pursuant to 11 U.S.C. § 1112(b). See Tornheim, 181 B.R. at 161 (failure to pay quarterly fees, without more, provides cause to dismiss or convert case); see also In re Hi-Toc Development Corp., 159 B.R. 691 (S.D.N.Y. 1993). Cause, therefore, exists to convert this case under Section 1112(b)(4)(K).

### B. There are No Unusual Circumstances Establishing that Conversion or Dismissal is not in the Best Interests of Creditors and the Estate.

Under Section 1112(b)(2), after the movant shows cause, the burden shifts to the Debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. §

1112(b)(2). See also In re Gateway Access Solutions, Inc., 374 B.R. at 561 (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under Section 1112(b)(2)).

> Section 1112(b)(2) provides that:
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that --
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
>> (I) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

There are no unusual circumstances in this case that would establish that conversion is not in the best interests of the creditors and the estate. There is no likelihood of plan confirmation within a reasonable time as no plan has been proposed, and no reasonable justification for the Debtor's breach of its fiduciary duties as a debtor in possession.

### C. Conversion is in the Best Interests of Creditors and the Estate.

Under 11 U.S.C. § 1112(b), the Court, in its discretion, must determine whether dismissal or conversion is in "the best interest of creditors." 11 U.S.C. § 1112(b). See also In re Gonic Realty Trust, 909 F.2d 624, 626-676 (1st Cir.1990) (the Bankruptcy Court has broad discretion

to convert or dismiss a chapter 11 case).  In a case where there are, or may be, assets sufficient to pay creditors some percentage of their claims but the debtor-in-possession has failed to perform as required in the case, conversion to chapter 7 is in the best interests of creditors.  In re Cloisters of Brevard, Inc., 117 B.R. 722, 723 (Bankr. M.D. Fla. 1990).  The Court should convert the Debtor's case to chapter 7 because conversion is in the best interest of creditors and the estate.  This Debtor may have assets, and the Debtor's conduct during its case suggests that the Debtor's current management has not complied with proper procedure as a debtor-in-possession and calls into question all of the financial disclosures made by the Debtor to date.  Conversion provides an avenue for an independent trustee to examine the Debtor's books and records, recover transfers, commence litigation and liquidate assets for the benefit of creditors.

## IV. NOTICE

The United States Trustee will serve the Notice of Motion and this Memorandum of Law upon the Debtor, Debtor's counsel, and parties who have filed Notices of Appearance in the case.  Notice of the Motion will be sent to all creditors through the Bankruptcy Noticing Center.  The United States Trustee respectfully requests that this be deemed good and sufficient notice of the motion and the hearing scheduled herein, and that no other further notice is necessary or required.

## V. <u>CONCLUSION</u>

Based on the foregoing, the United States Trustee respectfully requests that the Court enter an order granting the Motion and converting this chapter 11 case to chapter 7, and granting other and further relief as is just and proper.

Dated: New York, New York
      September 22, 2015                              Respectfully submitted,

                                                          WILLIAM K. HARRINGTON
                                                         UNITED STATES TRUSTEE, REGION 2


                                                          By: */s/ William E. Curtin*
                                                          William E. Curtin (WC-1974)
                                                          Trial Attorney
                                                          201 Varick Street, Suite 1006
                                                          New York, New York 10014
                                                          Tel. No. (212) 510-0500
                                                          Fax No. (212) 668-2255